To the sixth case, the United States v. Brown, Mr. Burns. May it please the court, I have three brief points and one slightly longer point. First, the government's key position at the time of the Batson hearing in the district court and on appeal was that when it walked into the courtroom, it had already placed African American jurors 74 on its potential strike list. Now, it had placed African American jurors 74 on its strike list according to the government because of his answer to the arrest question on the jury questionnaire. Now, if it had placed African American potential jurors 74 on its strike list, it should have also placed juror 3 and juror 81 on its potential strike list because those jurors displayed by their answer the same potential animus. They said they had been falsely arrested before? No, Your Honor. What one said was juror 3 said, I have been arrested, I've been prosecuted, and I've been convicted of drunk driving. And what juror 81 said was, arrested for aggravated assault, charges dropped. But with respect to both of those jurors, the prosecution's reason for juror 74 was that the fact that he had answered warrant for my arrest, wrong person, led to the potential for jury animus. Did he say something more than that? I thought he added that he was wrongfully arrested. He said, his answer was very brief, Your Honor. His answer to the first question was yes. His answer to the second question was, warrant for my arrest, wrong person. We don't know from this record whether he was actually arrested, whether he was wrongly arrested. All we know is he answered the question, warrant for my arrest, wrong person. Even assuming he was wrongly arrested, he indicates a certain amount of more animosity than you think would be necessary for the occasion. I beg to disagree, Your Honor. I don't see the difference between answering wrongly arrested and charges dropped. I think the only way we see a difference between the two is through a prism of race. I will tell you, in the town in northern Utah where I grew up that was 99.5% white, if a person had been wrongly arrested and subsequently freed, the last thought in their mind would have been that the system didn't work. The only way that we get to wrongly arrest is somehow worse than convicted of DWI or assault charges dropped is through a prism of race. What was the question that asked? Wasn't that actually the question where it said, were you ever arrested? Judge Mann, the arrest question read, I can almost quote it, the arrest question read, were you, any member of your family, or a close friend ever arrested, prosecuted, or convicted? And juror 74 answered yes to that question, and then when asked to explain it, he answered, warrant for my arrest, wrong person. Well, but the wrong person, they said, oh, we got the wrong guy and left, but he apparently was arrested based on the question. Well, it's potentially the case that he was arrested, but we don't know for certain that he was arrested. I guess there's the potential there, but during the voir dire of the jury, which lasted from 9.54 in the morning to about 11.30, the voir dire of the 28 jurors and four alternates, no, not a single follow-up question was asked by the court or the prosecution about the responses to the arrest question. This is truly astounding in itself, because at least 10 jurors answered that arrest question in the affirmative in some way. At least 10, and if the prosecution was serious about that question, it seems to me it would have wanted follow-up questions to potentially strike potential jurors for cause, and not just peremptory. If it wanted answers, but I don't think the government was serious about that question, and the reason I note that is my second point, which is, with respect to juror 13, now the government makes much about juror 13 being African American, and how that suggests that it didn't purposefully discriminate by striking juror 74. But our point with respect to juror 13 is not based on his race. Our point is, this is the juror who answered no to 13 questions on the jury questionnaire, but he left the arrest question blank. But he nevertheless made it to the jury without any follow-up questions on the arrest question. The truth is, the prosecution wasn't concerned, the government wasn't concerned here about the arrest question, because answers to those questions could cut both ways, as the government shows with juror 3, its argument with respect to juror 3, and how juror 3 was convicted of DWI, and in the government's experience, a conviction of DWI would make the potential juror want to hold someone else liable. All of these questions, without further development, much can be said of them that Carl Llewellyn said of canons of statutory construction in appellate judges, that there's an opposite canon of statutory construction on each point of statutory interpretation. Thank you. I will reserve the remainder of my time for rebuttal. Thank you, Mr. Burns. Mr. Miller? May it please the court, Eugene Miller for the United States. The United States requests this court to affirm the judgment of the district court, because it did not clearly err in determining in the district court that the United States did not exercise its peremptory challenge in its purposeful racial discrimination. It's certainly a serious allegation to allege that an AUSA who's sworn to uphold and defend the Constitution of the United States not only engaged in purposeful racial discrimination, but then lied to the court to cover up that discrimination. And as this court said in Marin, although a defense attorney certainly has an obligation to zealously represent their client, it's disappointing when they come forward with unfounded allegations. And in this case, defense counsel says he knows the motives of the prosecutor. He knows that a prosecutor wouldn't want to strike a juror who indicated he had been wrongly arrested. And we disagree with that, as the district court, who was in the trial court and had the opportunity to observe the manner, the demeanor of the prosecutor, had a past experience with the prosecutor, had an opportunity to observe the veneer, did. And found that, in fact, there was no – that the race-neutral reason that was offered was not a pretext for intentional racial discrimination. In fact, the standard here under Batson, under the third prong, is the defendant's burden. It's the defendant's burden to show that the reason proffered by the United States was either outlandish or a lie. We would submit that record. It's clear it's not outlandish to suggest a prosecutor would not want on a jury where the defense being offered is that wrongfully people are prosecuted all the time, and that the police didn't do their job correctly, would not want on that jury a person who had indicated on their jury questionnaire, yes, I've been arrested. We disagree with defense counsel. That was the answer to the question. Either arrested, prosecuted, or convicted. He said, yes. Yes, I've been arrested. I was the wrong person. There was a warrant for my arrest. Wrong person. You said he was convicted. No, Your Honor. I believe simply arrested. From reading the questionnaire, he was arrested. He was the wrong person that was arrested. And in this case, again, it's the defendant's burden. It never leaves the defendant's burden to show that reason is false or outlandish. Now, the defendant on appeal has raised a lot of arguments, and we think the nature of those arguments suggests that, of course, it couldn't be clearly erroneous, the district court's finding, as we can certainly, like attorneys do when they're trying to determine in the 10 minutes they have to exercise the peremptories, they argue sometimes over what do you think of this juror, what do you think of that juror. Those are the arguments that the defense counsel is making here as far as if he were the prosecutor, perhaps who he might think to use his peremptory strikes on. But that's not the issue here. The issue here and what the defendant's burden is is to establish that the reason offered by the United States, the race neutral reason, was outlandish or a lie. And they're far from meeting that burden and showing, in fact, that the district court clearly erred in making that determination. And I think it's important to note that this court has held that those arguments that have been raised here as far as several other jurors, those have been forfeited to reliance on that argument. It's uncharitable to the district judge to argue that the district judge committed clear error in not addressing arguments that the defendant never raised at the district court. When it's the defendant's burden to establish that the reason was either outlandish or a lie, the defendant didn't draw the judge's attention to these other three jurors that he now does on appeal. And in fact, the defendant admitted in the trial court the only juror in the entire pool who stated that they had been wrongly arrested was Juror 74. And what this court would also have to do is second guess the district court's credibility finding that the prosecution was not providing a protection reason when it noted that that juror had already made a list of the prosecution before the prosecution even knew the race of the juror. So for defense counsel to stand up here and state that the government was not interested in the answer to that question is belied by the record below. And in fact, I think it's important to note here, that's not a question that was asked by either of the parties. It was a question that was on the juror questionnaire. And it was the juror 74 who volunteered in response to the answer that they were the wrong person, that they had been arrested, and that they were the wrong person. So it was the juror that had put that forward. Defense counsel suggests that the prosecution should have asked additional questions. They certainly could have. But when we look at this record, neither the defendant or the prosecution asked any follow-up questions of any members of the jury. Obviously, it's the prerogative, if they're not going to ask for excusing jurors for cause, for the parties to simply exercise a preemptory challenge, as long as it's not based on any impermissible reason. And again, we suggest that no impermissible reason has been shown here. Just briefly to, again, I don't think this court needs to get there because the district court did not clearly err, and because these arguments were forfeited. But getting into the other jurors, as we noted, juror 13, who they note in their brief should have been asked follow-up questions, was an African-American juror. And this court just recently held in the Cruz case that the fact that the prosecution leaves other jurors on the jury of the race of the juror that was stricken, it helps to confirm that that strike wasn't exercised in a discriminatory fashion. As we look at the other two jurors, I just respectfully disagree from having tried cases for 20 years in the district court, as far as a DUI conviction has the same effect as someone who has been wrongly arrested. We agree to disagree on this, but that certainly doesn't make it an outlandish reason. We get lots of jurors who have been convicted of traffic offenses. And we stand by our position in the brief that jurors, depending on, of course, how they appear at the voir dire, how they answer the questions, which is not part of the record here because it wasn't raised by the defendant in the district court, jurors who have been held accountable for their criminal conduct often make very good jurors, as they think other people should be held accountable for their criminal conduct. And the other factor which we point out in our brief is to just, in a vacuum, point out two jurors and say those should have been struck by the United States. You know, we know better than the prosecutor that those jurors should have been struck, excludes the jurors who were struck. It's not a process, as this court is well aware, of just there are six jurors and only six jurors that the United States would not want on the jury. The process is to leave the most favorable jurors possible without taking impermissible factors into account on that jury. So in this case, for example, there was one juror who made the list also who had put on there, I trust no one. We'd have to compare that person against a person who had been convicted of a DUI. Again, the court's aware of all this, but I just point that out to say that the argument here, the mundane, mundane quarterbacking as to whether you would exercise a strike here or there, does not rise to the level of establishing that the prosecutor was lying when the prosecutor exercised that preemptory strike for a juror that had been wrongly arrested. And if the court has no more questions, I'll return to the balance of my time. Thank you, Mr. Miller. Mr. Brown? There are cases in which this court gives discretion to the district court with respect to bats and challenges. But I submit if there's one principle I can discern from this court's case law, it's this. And particularly the case law since Miller, Allen, Snyder. And I'm talking about your decision, Judge Flom and McMaft. I'm talking about the panel this past week in Cruz. I'm talking about Hendricks. I'm talking about Rutledge. The one principle that can be discerned there is, sure, we give discretion to the district court. If the district court is engaged in the Batson analysis, if the district court follows the correct standard, if the district court appears to be even-handed. And that wasn't the case here, Your Honor. And a review of the record makes clear it's not the case. I'm sorry, I'm at the end of my time. No, you've still got a minute. Oops, still a minute. I'm sorry. Look, that will allow me to make this point. Here's why it wasn't the case. The district court was prepared to accept the, and in fact did before, accept the prosecutor's race neutrality. Yeah, but Mr. Burns, when the objection was raised, didn't the district court proceed to make the inquiry that was in response to the objection? Your Honor, it made what I call a very cursory inquiry, but not the type of inquiry that your cases talk about. It didn't look at comparators. It didn't probe. It didn't look at comparators. It didn't look at the reason why no one asked particular questions. It was a three-minute Batson hearing. Thank you. All right. Mr. Miller, thank you. Mr. Burns, thank you. And Mr. Burns, you accepted the appointment in this case, and you have the additional thanks of the court for so doing. Thank you. All right. Case is taken under advisement, and the court will stand in recess.